Good morning. May it please the Court, my name is Eric Gibbs and I represent the plaintiffs and appellants Victoria Gonzalez and Robert Royalty. First, and as an aside, I'd like to address the May 2nd 28J letter that we did submit to the Court. That letter asserts that the court in the Madrazo case analyzed the unfair prong of the UCL. That assertion was incorrect. The court analyzed the unlawful prong of the UCL, not the unfair prong. I apologize to the court for the error and I apologize to counsel for the error. I do think Madrazo was never the less... No good deed goes unpunished. Pardon? No good deed goes unpunished. I thought I needed to apologize. We appreciate that. So my intention is to set the foundation for my UCL standing argument by reiterating three of the findings that the district court made in its May 18th 2009 order. First, it found that there is a genuine issue of material fact as to whether defendants' bathtubs complied with the HUD federal fire standards. Second, the district court found that defendants would not have been able to sell their homes without representing that the bathtubs complied with the federal fire safety standards. And third... You mean sell their homes? Because the bathtub, if it doesn't comply with HUD standards, is meaningless if it's out of the home. In order for the defendant to sell the bathtub to the manufacturer of the home, the defendant has to represent that that bathtub complies with HUD safety standards. Well, I understand the manufacturer of the home has an issue in that regard, but your clients have a question of whether or not their home has been diminished in its value. The bathtub separate from the home is meaningless as far as HUD is concerned, isn't it? I'm not sure I'm following your question. Our clients purchase... HUD standards deal with a manufactured home that has unique fire performance issues. Correct. And therefore, for the home to be compliant with HUD, the entire home as manufactured, it has to comply with HUD safety standards. But if the bathtub is removed from the home, you try to sell the bathtub to someone else, then the standards are meaningless. It has to do with the HUD standards based upon the tub in the home and whether or not there is a reduced value in the home. You don't agree with that? Well, I still don't know that I'm following it. Our clients purchased homes that were certified as being HUD compliant. Those homes included bathtubs in which the district court has found that there's a material issue of contested fact as to whether those bathtubs themselves were HUD compliant. As a component of the home? As a component of the home. Our contention is that if we prevail on our case and we demonstrate that those bathtubs are not HUD compliant and that the defendants did not have a reasonable basis to assert in the first instance that those bathtubs were HUD compliant, then the remedy we seek is the removal of the bathtubs from the home and a replacement of a bathtub that is HUD compliant. Our clients bought HUD compliant homes. They don't have HUD compliant homes if we prevail on our case. Well, you have a fact issue as to whether or not Ms. Gonzalez has got a HUD compliant home, but you don't know whether Mr. Royalty has got a HUD compliant home, do you? Well, again, Mr. Royalty purchased a home which contains one of the bathtubs that's at issue in our case. As I said, the district court has found that there's a genuine issue of material fact as to whether all of the bathtubs that were sold to the plaintiffs in the Remember, we're past discovery. We're past summary judgment. The case is done. It's ready for trial. If we prevail on an issue at trial, then we'll have proven that Mr. Royalty has a home equipped with a noncompliant bathtub. So Mr. Royalty has a home with what we say is a noncompliant bathtub. Ms. Gonzalez bought a home that had a noncompliant bathtub in it. We removed that bathtub and tested it, and it failed the federal flame standards that defendants were using at the time. So you have a fact question as to whether or not Ms. Gonzalez had a home with a noncompliant tub. Correct. But you're assuming based upon the idea that somewhere up to had noncompliant tubs, that Mr. Royalty had a noncompliant tub as well? Well, I'm not assuming just based on that. I mean, there's a boatload of evidence before the district court that goes to whether or not these tubs are compliant. And it's why at the end of the case the district court found that there's a genuine issue of disputed fact over whether the tubs, all of the tubs, are compliant. And again, it's the same point with respect to the finding that there's a genuine dispute as to whether defendants had a reasonable basis to assert that any of their bathtubs satisfied HUD's federal fire safety standards. Well, in the end, the district court filed against you. To cite these findings along the way is somewhat irrelevant, but we respond to this. The fact that struck me very strongly was 1,500,000 of these tubs have been sold, and there was no case where they were found to have caused a fire. Well, that's quite a safety record. Well, and that's not precisely accurate. There is evidence in the record as to one fire, but I think... Well, now, wait a minute. There was a fire, but there was a settlement. Nothing was established. Nothing was established. I'm sorry. Nothing was established as to the tub. I mean, there was a settlement does not constitute a finding. That's correct. There was not a finding in the earlier Holmes case. Yeah. But the evidence from the Holmes case... Well, don't go into the evidence now. My statement was you don't have any case. You don't. We have an example of the Holmes fire. What's that? We have the Holmes case as an example of the fire. But this isn't an instance, I don't believe, where we're going to be able to come in and say 19 Holmes have burned down, therefore these bathtubs present an unreasonable safety risk. The safety risk is defined by federal standards. Well, it would certainly... You create the incredulity when you have a million and a half examples going the other way. Well, I mean, like I said, we've pointed to one home in which a bathtub, in which there was a fire and a bathtub was involved, but does it practically matter? Nothing proved. We have... There's 17,000 or so fires a year. Not in bathtubs. With respect to manufactured homes. And the purpose of the safety regulation is to reduce the harm that those fires cause. In other words, reduce the amount of flame that might spread and flat out save lives. That's the underlying point of the regulations. So where's the economic proof of actual economic harm? Well, again, I'll revert back to the district court's earlier finding. The proof we put on of economic harm was the cost necessary to replace the non-compliant tub with a compliant tub. Well, that assumes it gets replaced. Well, the point of the lawsuit is to replace the bathtubs with compliant bathtubs. That's specifically the relief that Mr. Royalty seeks in paragraph 99 of our complaint. If you elected to do that, but even if we assume the concept that a failure to comply with the HUD standards means you've got something somewhat less than what you intended to buy when you bought the home in the first place, were you not obligated to demonstrate how much less? And can you really assume that just the voluntary act of replacing the tub necessarily translates into what that economic damage would be? Well, we're sort of stuck between a rock and a hard place on that one. I mean, we put on our proof initially of the replacement cost, of the cost of manufacturing the tub and the like. And that proof was satisfactory for the district court on the initial round of the motions for summary judgment. The district court found that plaintiff established the amount of economic loss by putting on proof of the cost of replacement. And so that's the goal of the case. And we were satisfied that we had, you know, we had met the standing requirements at that time. Now, Judge Pragerson was troubled by the notion that the Gonzales tub was pulled out and in effect created the replacement cost, which she Where's the evidence? You said there's evidence of the cost of replacement and that these people want all of these tubs replaced. So is this class certified for 1.5 million homes that are all going to now get their tubs replaced? I don't believe so. I think in California that's a much smaller amount. But off the top of my head, I'm not precise enough. I think the 1.5 million may be the number of homes sold. Okay. So you're just talking about California purchasers? It's a California class, California purchasers. But that numerosity factor is, we don't know? No, the court certified the class. The court found numerosity. Yes. But how many? Off the top of my head, I don't know. I can look through the record and tell you what that number is. Okay. All right. Let's hear from the other side. Thank you, Your Honors. May it please the Court. My name is Peter Gelblum. I'm from the firm of Mitchell Silverberg and Knopp, representing the defendants in this case. The first thing I want to make clear, and I think Judge Newman's comments went to it, is that this case is not about safety. You might surprise you to look closely at the Second Amendment complaint and find that there is not a single allegation that these tubs are unsafe. There is not a single allegation that the plaintiffs are concerned about their safety. In fact, the only allegations regarding any kind of injury are in paragraphs 36 and 45, which exclude all claims for personal injuries from the case. The other reason we know the case is that they haven't had any fires and nobody's been injured in terms of personal injury. I think the reason for it is more strategic because it makes it harder to get a class certifying. But in any event, that is absolutely correct, as Judge Newman pointed out, one and a half million tubs and not a single fire. The one fire that Mr. Gibbs alluded to was a tub not made by defendants. It was 10 years ago, and it was a small, unrepresentative incident, as Judge Gregerson found. So there is no credible fear of injury, no safety problem here at all. So what about the replacement cost? First of all, there is a federal requirement that these tubs be certified safe, correct? They'd be certified to the manufacturer and homemaker. There's no requirement. There is a legitimate concern of acceleration. I mean, there's baby bedding. There's airline seats. I think we're aware that fire accelerant materials are a serious concern, and that's what the subject of the regulation is. Is that correct? Yes, concerning the rate that the flame spreads once it catches. It's not a catching fire issue. The tub's past the ignitability standard. So what troubles me about this case, counsel, is it's a latent defect embedded, built into a mobile, I guess these are mobile homes. They call them manufactured homes now. Yeah, big scale manufactured homes. And in order to establish whether they are in fact non-compliant, would actually mean the need to pull one out, which Ms. Gonzalez did, isn't that correct? That's correct, she did do that. Now, if I became aware as a manufactured home owner, owner of a manufactured home, that my tub might be a fire hazard based on what the government has indicated about certification. And I went to a lawyer and said, you know, I don't know what I'm supposed to do about this. And the lawyer says, well, unless we have hard evidence of whether the tub is actually non-compliant, and then what it costs to take it out and put in a compliant one, we won't have enough proof of actual loss. Now, how is the plaintiff in that case supposed to avoid the consequence that Ms. Gonzalez is now in, that her lawyers pulled the tub out and tested it, and I gather there's enough factual question as to whether it's non-compliant. But that doesn't suffice to provide the concrete proof of the economic theory that replacement costs and so on and so forth would produce some level of economic harm. So what's a person to do in that situation? Well, they could pay for it themselves. That might produce some economic harm, and they didn't do that here. The lawyers did it. And, Your Honor, your hypothetical. So some person who scraped their life savings together to buy one of these manufactured homes because they couldn't afford anything better has to undertake to, at her own expense, and without consulting a lawyer, presumably, because then it would still be in furtherance of litigation, as I understand the theory. So it couldn't be considered. Well, there's a couple of problems. One is that she did not go to them saying, I'm concerned about the fire safety. What should I do about it? She went to them with some other completely separate issue, and they said, by the way, did you know there was a fire in a tub? And it may not be safe. And they didn't tell them. There's never been a, you know, not one and a half million without a fire. Well, we're not, you know, whether this case arose out of, you know, champerty or barriers or whatever you want to call it. I'm not going there. We don't want to go there. The fact is, is that it came to her attention it was potentially noncompliant. She could have read about it in a paper. She could have. So just stay with me. I'm trying to understand what the effect of the ruling is here, because there is a certification requirement, and it's a fire safety, and it's an embedded defect that is very, you know, it's the only way you can find out if it's really defective, and what the costs are to is to engage in destructive evidence gathering. We're not challenging her right to do that? We're not saying she shouldn't have done that? Well, but Judge Pragerson seemed to discount what her standing was, because it was furtherance of litigation. So it was not, you know, that wasn't good enough. Well, I mean, the law requires economic harm that the plaintiff, not the lawyers, but that the plaintiff suffers an economic harm. And that's what the law is. You know, if you can't afford to incur it, I'm not sure what you do in that case. But you have to have some economic harm to pursue this particular claim. There's other – I mean, there's potentially other ways to do that, but it didn't happen here. There is no evidence of what she paid for the tub. There's no evidence that her tub is, in fact, worth less than a compliant tub, because there's no evidence of what a compliant tub costs. There's no evidence of what it would cost to have bought a tub from somebody else. There's just – that evidence is not there. And as Mr. Gibbs said and admitted, the case is over. Well, but wait a minute. It's not a question – it's not a freestanding tub. Correct. It's not something, you know, just go out and replace it. It has to destroy a component part of her home. You can replace it. They did replace her tub. Yes, I know they did. With a nicer tub, right? But what's the – in order to discover it, she had – somebody had to pay money in order to discover and establish, in fact, that it was noncompliant. I agree. Okay. It wasn't her though. So what's the cost of that? Well, if she had paid, then she would have been fine. That would have been enough. Is that what you're saying? She would have solved that problem. Yes. Numerous other problems, which we've addressed in the briefs and I'm prepared to address today, she would have solved. She would have had some economic injury. Yes. But she didn't do it. One particular point about that, if I may, Your Honor. It's unclear whether the payment that – even if she had made the payment to a third-party plumber or contractor to replace the tub, whether that would suffice, because that is not a redressable injury. That's damages. You can't get damages under the ECL. You can only get restitution. That money was not paid to the defendants, so it can't be – so there's even a question – I didn't find any cases discussing that issue, but I think there's a legitimate issue whether that's even sufficient under the ECL for economic harm, because it's not redressable under the ECL. Do you concede that a manufactured home with a HUD-compliant tub is somehow more valuable, although maybe de minimis, but somehow more valuable than a home that does not have a HUD-compliant tub? No. It's such a small part of the home. I mean, there could have been all sorts of discovery taken about how the manufactured homemakers price their homes. I don't concede that, because it's such a small part. All the cases that we've seen are – you know, that are cited in the briefs are cases where it's an effective freestanding product consequence. And at any rate, there's no record in this case of what that difference in value would be. Correct. And that's – and that's crucial, obviously, both to establish economic harm in the first place and to make it redressable as restitution, because under the Colgan case, the Colgan v. Leatherman case, you have to be able to measure the amount, that difference. As one of Your Honors said earlier, you have to be able to measure how much the difference is. And there's zero evidence in the record of that. I did want to highlight one point in my few seconds left about reliance. It's not the basis for the judge's ruling below, but it's sort of an easy way to deal with this case in that it's – they're undisputed issues. It's undisputed that they did not rely, completely undisputed. Never saw labels, never heard about a flame spread standard, nothing. And it's undisputed that if reliance is – that if it's a fraud-based theory, then reliance is required. And as was discussed in the brief, if you look at paragraph 95 of the Second Amended Complaint in particular, which is the charging allegation for the unfair claim, it's all about the representation. So it is a fraud-based theory. Thank you, Your Honors. Thank you. Thank you. If I may, the class – the court's order certifying the class says that defendants can see that they sold more than 18,000 BetterBath ABS bathtubs in California during the last four years. So there's about 18,000 class members. Tubs sold or tubs that were noncompliant? Our contention is that none of those tubs are compliant. The district court found that that's a disputed fact that could go to a jury – well, to the court as a prior fact. Okay. Thank you. Thank you. All right, counsel, we appreciate the argument. Thank you. And Gonzales v. Kinrow is submitted. Thank you.
judges: Gritzner, Noonan, Fisher